**In re Application of Michael D. MOSHER for Admission to the United States District Court for the Western District of Michigan.**

No. 4:93:MC:5.

United States District Court, W.D. Michigan.

May 7, 1993.

Michael D. Mosher, pro se.

Douglas E. Wagner, Warner, Norcross & Judd, Grand Rapids, MI, for objector.

## *OPINION*

ENSLEN, District Judge.

This case is before the Court on the application of Michael D. Mosher for admission to the Bar of the Western District of Michigan. On April 21, 1993, this Court held a hearing in this case concerning Mr. Mosher's admission. After an extensive hearing, the Court denied Mr. Mosher's application. In addition to the oral opinion issued from the bench on April 21, 1993, the Court has three further observations to supplement the record in support of its denial of Mr. Mosher's application.

First, during Mr. Mosher's argument, but prior to the Court's oral opinion, Mr. Mosher acknowledged that he made an offer to Upjohn to forego pending and prospective claims against the company, as well as remove himself from any future Halcion litigation, if Upjohn would deposit $5 million in his trust account by December 18, 1992 as a "down payment" on a $15 million total settlement package. In other words, Upjohn could buy him out of the Halcion litigation.

The Court asked Mr. Mosher if this arrangement violated any of the Rules of Professional Conduct in Texas (where the offer was made by Mr. Mosher). I noted that such an arrangement would be in violation of Rule 5.6 of the Michigan Rules of Conduct.[1] Mr. Mosher responded to the Court's inquiry with an unequivocal "no."

The Court then took a lengthy recess during which I did some research and discovered that Texas does in fact have a Rule of Professional Conduct similar to Michigan Rule 5.6. In Texas, DR 2–108(B) precludes a lawyer from entering into a settlement agreement that restricts the right to practice law. *Musslewhite v. State Bar of Texas,* 786 S.W.2d 437, 443 (Tex.Ct.App.1990); *see also Shebay v. Davis,* 717 S.W.2d 678, 682 (Tex. Ct.App.1986). This provision provides, in part: "In connection with the settlement of a controversy or suit, a lawyer shall not enter into an agreement that restricts his right to practice law." DR 2–108(B) (quoted in *Musslewhite,* 786 S.W.2d at 443).

In ruling against Mr. Mosher's application, the Court informed him of this Texas Rule. In response, Mr. Mosher presented a brief, but revealing, rebuttal to the Court's decision. In his diatribe to the Court, Mr. Mosher made the following remarkable statements:

MR. MOSHER: ... First of all, Your Honor, I was not familiar with the ABA canon.

THE COURT: You are supposed to be.

MR. MOSHER: First of all, Your Honor, *I can't carry those around in my head. When I sit down to argue, those rules aren't in my head. I haven't memorized the ABA canon. Had I been aware of DR2–108(B) which I was clearly obviously not aware of, I would not have made the offer at the time. I was literally unaware of it,* Your Honor. I wasn't deliberately unaware. I certainly would not stand up in front of this Court and deliberately mis-

represent to this Court. I have not ever misrepresented to a Court intentionally. I have been wrong on occasion, not reading everything ·in the sequence of events that they have occurred.... I certainly in no way intended to mislead this Court.

Court Transcript (Emphasis Added).

■ Thus, not only did Mr. Mosher reinforce the fact that he violated Texas Rule DR 2–108(B),[2] but he admitted to not knowing, or apparently not being concerned with, the Rules of Professional Conduct. His words, "[w]hen I sit down to argue, those rules aren't in my head," clearly express why this Court believes that Mr. Mosher should not be allowed to practice in this District: he does not take the Rules of Professional conduct seriously. Mr. Mosher cannot violate the Rules of Professional Conduct and then attempt to avoid the consequences of his violation by claiming ignorance. When it comes to the Rules of Professional Conduct, ignorance is *not* bliss.

Mr. Mosher's next statement, "[h]ad I been aware of DR2–108(B) which I was clearly obviously not aware of, I would not have made the offer at the time ..." again illustrates his cavalier attitude toward the Rules of Professional Conduct. If every attorney followed Mr. Mosher's advice, violations of the Rules of Professional Conduct would be commonplace. Any attorney could violate numerous Rules and then avoid the consequences of their actions by simply stating, "Oops, I didn't know about that Rule. Oh well, I won't do that again!"

Perhaps we could even extend the logic of Mr. Mosher's argument to the criminal justice system. Why not give every person who commits a crime the opportunity to defend his or her action by saying, simply, "I did not know that _____ [fill in blank with appropriate act] was a crime. However, since I now know that it is a crime to _____ [fill in appropriate act], I promise to not do it again"?

---

1. Rule 5.6 provides, in relevant part:
   A lawyer shall not participate in offering or making:
   (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties.

2. I note that Mr. Mosher argued that Upjohn's attorneys essentially induced him to make the buy-out agreement. While this fact has no bearing on the outcome of this Opinion, if it is true, then Upjohn's attorneys are also in violation of DR 2–108(B).

■ Unfortunately for Mr. Mosher, attorneys are required to know the Rules of Conduct.[3] Thus, in his response to the violation of Rule 2–108(B), Mr. Mosher implicitly acknowledged that he is in violation of yet another Rule of Conduct, e.g., failure to learn and/or know the Rules of Conduct.

■ The Court's second observation is related to my first observation. Specifically, during Mr. Mosher's brief response to the Court's oral opinion, he repeatedly stated, "I did not mislead this Court." However, as is clear from the above discussion, Mr. Mosher specifically stated that his offer to be bought out by Upjohn did not violate the Rules of Conduct. He did not waiver on this point until *after* the Court informed him that, in fact, his offer did violate the Rules of Conduct. How can Mr. Mosher honestly say that he did not mislead, or intend to mislead, this Court? Rather than saying, "I don't know if Texas has a Rule like 5.6"—or—"I am unfamiliar with any Rule in Texas like 5.6," he instead chose to specifically state that his offer to Upjohn *did not* violate *any* Rule in Texas. Undoubtedly, Mr. Mosher misled this Court.

Finally, Mr. Mosher went out of his way to claim that he did not violate the Texas Supreme Court decision which held that "Mary Carter Agreements" are against public policy. *Elbaor v. Smith*, 845 S.W.2d 240 (Tex. 1992). To a large extent, this Court agrees that the deal Mr. Mosher arranged with Mr. Shofner is distinguishable from the "Mary Carter Agreement" in *Elbaor*.[4] However, in making this argument, Mr. Mosher loses the forest for the trees. That is, the arrangement with Mr. Shofner, while not precisely a "Mary Carter Agreement" as detailed in *Elbaor*, at the very least approaches fraud on the court in Texas. Specifically, it is arguable that this arrangement violates Texas Rule of Professional Conduct 3.01, Meritorious Claims.

Further, in its oral opinion, this Court stated that Mr. Mosher failed to give the Court contrary authority (or any authority at all) in his Brief to the proposition that:

> There is nothing unethical or even uncommon about making agreements with parties opponent [sic] who then remain in the suit. "Mary Carter" type agreements, in which one defendant settles with the plaintiff but remains in the suit as a nominal defendant have been common for many years in many jurisdictions. [no citations provided].

Brief of Michael D. Mosher at 10.

In response, Mr. Mosher argued that he was not obligated to cite the *Elbaor* case because it was not on point with the facts in the *Shofner* case. While the Court agrees that *Elbaor* is not directly on point with the facts of the *Shofner* case, an attorney who is candid with a Court should have provided some contrary authority to the general proposition that, " 'Mary Carter' type agreements ... have been common for many years in many jurisdictions." As the Court pointed out to Mr. Mosher, there are numerous interpretations of "Mary Carter Agreements," as well as numerous cases and other authorities holding that "Mary Carter Agreements" (including agreements similar to the one in the *Shofner* case), are *not* ethical and/or common

---

3. I called the Ethics Attorney in Texas, Mr. Steve Moick, to verify that attorneys in Texas must know the Rules of Professional Conduct. He informed me that attorneys in Texas are "required to know the Rules of Conduct." Telephone Interview with Steve Moick, Ethics Attorney, State of Texas (April 27, 1993).

4. Specifically, the relevant facts in *Hurley v. The Upjohn Company, et al.*, No. 93–005593 (Harris County Dist.Ct.1993) are as follows: Mr. Mosher represents the plaintiff in this case. Several defendants have been named in the complaint, including the Upjohn Company and Mr. James M. Shofner, a Florida pharmacist who allegedly dispensed medication pursuant to prescription. It is arguable whether the action against Mr. Shof-

ner is sustainable. That is, the plaintiff probably does not have a cause of action in Texas against Mr. Shofner. Nonetheless, Mr. Mosher concedes that Mr. Shofner was only named as a defendant in the Texas lawsuit to defeat diversity jurisdiction. Mr. Mosher entered into an contract and covenant with Mr. Shofner regarding the *Hurley* litigation. The terms of this contract are as follows: Mr. Shofner was to answer the lawsuit and agree not to challenge the jurisdiction of the Texas Court. In exchange, Plaintiff would take no action against Mr. Shofner and, at the expiration of one year and a day, dismiss Mr. Shofner from the lawsuit and covenant not to sue him in the future.

**406**

and/or acceptable. *See, e.g., McDaniel v. Anheuser–Busch, Inc.,* 987 F.2d 298 at 309 n. 49 (5th Cir. April 1, 1993); *see also* American Bar Association, Informal Opinion Letter (#1386, June 2, 1977); Modern Legal Glossary 333 (1980).

Mr. Mosher could have avoided the Court's concern with this adverse authority issue by simply dropping a *"but see"* or *"contra"* footnote in his brief.

### Conclusion

Accordingly, for all the reasons stated in the Court's oral opinion issued on April 21, 1993, as well as all the reasons in this Opinion, Mr. Mosher's application to the Bar of the Western District of Michigan is denied.