In re Application of Michael D. **MOSHER for Admission to the United States District Court for the Western District of Michigan.**

No. 93–1818.

United States Court of Appeals, Sixth Circuit.

Argued April 26, 1994.

Decided June 6, 1994.

Michael D. Mosher (argued and briefed), pro se.

Douglas E. Wagner (argued and briefed), Warner, Norcross & Judd, Grand Rapids, MI and David W. Brooks (briefed), Shook, Hardy & Bacon, Kansas City, MO, for the Upjohn Co.

Before: MERRITT, Chief Judge; and MILBURN and SILER, Circuit Judges.

MILBURN, Circuit Judge.

The district court denied Michael D. Mosher's application for admission to practice before the United States District Court for the Western District of Michigan, 830 F.Supp. 403. This is a direct appeal from that final decision.[1] On appeal, the issues raised by Mr. Mosher are (1) whether Mr. Mosher was denied due process, and (2) whether the district court abused its discretion in denying Mr. Mosher's application. For the reasons that follow, we reverse and remand.

## I.

Mr. Mosher has been admitted to practice in New York and Texas, various district courts in New York, Texas, and Utah, the Court of Appeals for the Fifth Circuit, and the Supreme Court of the United States. In the past, he has successfully litigated products liability cases against The Upjohn Company involving the prescription drug Halcion. On March 8, 1993, Mosher appeared with another Halcion plaintiff at a pretrial status conference in *Carolyn Ort v. The Upjohn Company*, No. 1:92 CV 664. The conference was held before a magistrate judge of the United States District Court for the Western District of Michigan. Because he was not admitted to that court, Mosher offered a motion to appear pro hac vice, but the magistrate judge instructed him to file an application for general admission instead. Mosher filed his application for admission.

On March 26, 1993, Douglas E. Wagner, counsel for The Upjohn Company, wrote a letter to the magistrate judge, objecting to Mosher's admission because Wagner had received information that allegedly called into question Mosher's fitness to practice before the court. Specifically, in another pending Halcion case, *Robert W. Hurley v. The Upjohn Company, et al.*, No. 93–005593 (Harris County, Texas), Mosher had named as a defendant James M. Shofner, a Florida pharmacist, solely for the purpose of ensuring nondiversity of citizenship and thereby preventing Upjohn from removing *Hurley* to federal court. Wagner's letter argued that the claim against Shofner was meritless. Wagner's letter also charged that Mosher, after filing the complaint against Shofner, had offered Shofner an allegedly unethical arrangement in which Shofner would agree to answer the complaint and not challenge jurisdiction, and the plaintiff, Hurley, would agree to dismiss the case against Shofner after one year and a day. J.A. 9–15. We will refer to this proposed agreement as the Shofner proposal.[2]

The district court set the matter for hearing and ordered Mosher and counsel for Upjohn to submit simultaneous briefs on the issues raised in Wagner's letter. Mosher and Upjohn both filed briefs on April 14,

1. A denial of a petition for admission by the district court is an appealable final decision. *In re Berkan*, 648 F.2d 1386, 1389 n. 1 (1st Cir. 1981); *see also In re Levy*, 348 U.S. 978, 75 S.Ct. 569, 99 L.Ed. 762 (1955) (per curiam) (reversing district court's denial of application for admission because the record revealed no sufficient grounds for denial). *But see In re Wasserman*, 240 F.2d 213, 214 (9th Cir.1956) (holding that denial of application for admission was not a final decision and therefore not appealable); *In re Jacobi*, 217 F.2d 668 (D.C.Cir.1954) (same); *Brooks v. Laws*, 208 F.2d 18 (D.C.Cir.1953) (same). The Upjohn Company, the objector-appellee in this case, has not contested or addressed the jurisdiction of this court.

2. No issue is raised on appeal by either party as to whether Mosher should not be admitted to practice before the United States District Court for the Western District of Michigan because of the Shofner proposal. Thus, on remand this matter may be considered by the district court in its discretion. Regardless, we express no view as to the eventual outcome in the event the district court considers this issue.

1993. Upjohn's brief addressed the charges in Wagner's letter but also raised new charges, all but one of which the district court found insubstantial or factually incorrect. The one charge that concerned the district court was that Mosher had violated the Rules of Professional Conduct by offering a settlement agreement in other Halcion cases that would have restricted his right to practice law. This charge referred to a December 9, 1992, settlement demand letter sent to Upjohn and its counsel by Mosher at Upjohn's request. The letter asked Upjohn to make a $5,000,000 down payment on settlement of certain claims by December 18, 1992, to show that Upjohn in good faith intended to reach a settlement. The letter stated that Mosher had received calls from many other potential Halcion plaintiffs but had not yet accepted their cases. The letter concluded by stating:

> But I tell you frankly that I will not again put off any other Halcion victim after December 18, 1992. If I don't have the check by then we will never again talk about a global settlement that removes me from Halcion/Xanax litigation.

J.A. 334. We will refer to the proposed agreement embodied in this letter as the proposed settlement agreement.

Mosher did not know of the charges relating to the proposed settlement agreement until the day of the hearing, April 22, 1993, because Upjohn's counsel had mailed the brief to Mosher's partner's office in Dallas, Texas, rather than Mosher's actual office in Paris, Texas. By the time the brief arrived in Paris, Mosher had left for the hearing. Recognizing that Upjohn's counsel had raised new issues in its brief, the district court opened the hearing by stating the new objections and allowing Mosher an opportunity to respond to them. After both sides had addressed all charges, the district court took a short recess, and then returned to issue an oral opinion.

The district court found that Mosher had not been truthful in his brief and before the court in the hearing and denied Mosher's application. The district court cited several instances of untruthfulness. First, Mosher stated in the hearing that the proposed settlement agreement did not violate the ethical standards of Texas, when in actuality it did. Second, in his brief Mosher stated that in some jurisdictions there was strict liability for pharmacists. About this statement, the district court stated: "I believe him to be wrong and I believe him not to be telling me the truth." J.A. 415. Finally, in his brief Mosher did not cite a recent Texas case holding Mary Carter agreements violative of public policy, which the district court felt there was a duty to cite.

After the district court stated its reasons and denied Mosher's application, Mosher was given an opportunity to address the court. Mosher responded to the court's reasons for denial. As to the proposed settlement agreement, Mosher stated he was unaware of that ethical rule and certainly did not attempt to mislead the court. As to the statement about strict liability, Mosher said he relied on *Corpus Juris Secundum,* which he had cited in his brief for that proposition. As to the duty to cite the recent Texas case, Mosher argued that he had no such duty because the case was obviously distinguishable.

On May 7, 1993, the district court issued a written opinion supplementing his oral opinion and ordered that Mosher's application be denied. This timely appeal followed.

## II.

Rule 16 of the Local Rules of Practice and Procedure of the United States District Court for the Western District of Michigan allows any attorney that has been admitted to practice before any other court and is in good standing and active status with such court to apply for admission to the bar of the Western District of Michigan. This is done by filing a written petition supported by a statement of a previously admitted bar member that he or she knows the applicant to be of good character and reputation and believes the applicant to be well qualified to be a member of the bar. The local rules do not provide any standards for deciding when a petition should be granted or denied.

A district court has the inherent authority to deny an attorney's application for admission to practice before the district

court. *In re Snyder,* 472 U.S. 634, 643, 645 n. 6, 105 S.Ct. 2874, 2880, 2881 n. 6, 86 L.Ed.2d 504 (1985). This authority is based on the fact that upon admission the attorney becomes an officer of the court. *See id.* at 643–45, 105 S.Ct. at 2880–81. The court itself must be able to decide upon whom it will bestow the powers and responsibilities incumbent on that position. The exercise of this authority is a matter left to the discretion of the admitting court. *Ex parte Burr,* 22 U.S. (9 Wheat.) 529, 530, 6 L.Ed. 152 (1824). Thus, a district court's denial of an application for admission to practice before the district court is reviewable by this court for an abuse of discretion. *See id.* at 531; *Snyder,* 472 U.S. at 643 n. 4, 646, 105 S.Ct. at 2880 n. 4, 2881–82, *In re G.L.S.,* 745 F.2d 856, 860 (4th Cir.1984).

■ The court must be mindful of the important interests at stake in a decision on admission to practice before the court. On the one hand, there are the interests of the applicant attorney in being able to practice his profession and the interests of clients in being represented by counsel of their choosing. "[T]he profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him." *Burr,* 22 U.S. (9 Wheat.) at 530, 6 L.Ed. 152. As to the client's interest, it is particularly strong in a situation such as this where the attorney seeks admission because a client already has chosen him to represent her in that court. On the other hand, the public interest requires the court to consider whether the applicant attorney will promote the administration of justice. "[I]t is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved." *Id.* Thus, a district court should consider whether the applicant attorney possesses the professional and ethical competence expected of an officer of the court. *G.L.S.,* 745 F.2d at 859. We hold that only the strongest evidence of unfitness can justify a denial of admission where, as here, a litigant's opponent, by objecting to the admission of the litigant's attorney, seeks to deprive the liti-

gant of chosen counsel who previously has proven successful in similar cases.

■ The district court did not decide whether the charges leveled by Upjohn, i.e., *allegedly* unethical practices in other cases in other jurisdictions, were enough to deny Mosher's application. What troubled the district court and was the basis for its denial of Mosher's application was that it felt that Mosher was not candid with the court during the application proceedings. The district court cited instances where Mosher supposedly misled the court. These alleged misrepresentations related to three of the charges made by Upjohn: (1) the charge that joining Shofner as a defendant in the other litigation was unethical because the claim against Shofner was meritless, (2) the charge that the Shofner proposal was unethical, and (3) the charge that the proposed settlement agreement was unethical. The district court then concluded:

> It ends up that I do not trust the representations made by Mr. Mosher, and the lawyer in the Western District of Michigan has to have the confidence of his clients and has to have the confidence of the Court of being truthful.
>
> I do not find that Mr. Mosher has been truthful with me in these proceedings; and for that reason I deny his application for admission to the Western District Michigan court either as a regular member or pro hac vice.

J.A. 415–16. The problem with the district court's conclusion is that it is not supported by the record, and therefore the denial of Mosher's application was an abuse of discretion.

As to the first charge, Mosher, in his brief, had discussed the potential liability of pharmacists in order to refute Upjohn's charge that the claim against Shofner had no merit. Mosher's brief stated:

> Mr. Wagner has no basis for his assertion that Robert Hurley's claim against the Florida pharmacist is meritless. Under Texas law (which generally follows the Restatement, Second, of Torts, and thus reflects common tort law), a druggist is under a duty to use that high degree of care which a very prudent and cautious phar-

macist would exercise under the same or similar circumstances. *Speer v. United States*, 512 F.Supp. 670, 679 (N.D.Tex. 1981), aff'd. 675 F.2d 100 (5th Cir.1982); *Burke v. Bean*, 363 S.W.2d 366 (Tex.Civ. App.—Beaumont 1962, no writ). *Indeed, in some jurisdictions, pharmacists have been held strictly liable for placing an unreasonably dangerous drug in the stream of commerce.* They have also been held liable for injuries resulting from their failure to warn the customer of a drug's dangerous character, or dispensing a drug without giving proper instructions as to its use. *See, generally,* 28 C.J.S. Supp. §§ 43 through 53. Thus, Mr. Hurley has a good faith basis in law for seeking to hold his pharmacist liable for his injuries.

J.A. 49–50 (emphasis added). The district court was concerned about the accuracy of the sentence emphasized above. As to this sentence, the district court stated: "[Mosher] tells me in the brief that I have that there is strict liability for pharmacists. I believe him to be wrong and I believe him not to be telling me the truth." J.A. 415.

Mosher relied on *Corpus Juris Secundum* for the strict liability proposition, and in fact that authority does support the proposition. It states: "In some circumstances, the theory of strict liability is applied so as to impose responsibility on a druggist for injuries, regardless of his claim of due care and diligence." 28 C.J.S. Supp. *Drugs & Narcotics* § 47. For this proposition, the authors of C.J.S. cite *Fleet v. Hollenkemp*, 52 Ky. (13 B. Mon.) 219 (1852), a case in which the Kentucky court held a druggist strictly liable. The Kentucky court later cast doubt on that holding in *Ohio County Drug Co. v. Howard*, 201 Ky. 346, 256 S.W. 705 (1923), and many other courts have expressly rejected the notion that a druggist is strictly liable, *e.g., Coyle v. Richardson-Merrell, Inc.*, 526 Pa. 208, 584 A.2d 1383, 1387–88 (1991) (and cases cited therein).

However, the question here is whether Mosher sought to mislead the court as to holding a pharmacist strictly liable, and the answer to that is that he did not. First, Mosher's statement in his brief is true. As *Fleet* shows, pharmacists have been held

strictly liable. Second, the authority Mosher cites supports his proposition. Mosher did not try to mislead the court by citing cases that actually did not support his statement. Mosher cited the authority upon which he relied. Simply because the district court does not credit the authority and disagrees with the statement it supports does not mean that Mosher was lying to the court. Furthermore, this point, whether or not pharmacists are strictly liable, was of minor significance to Mosher's argument. The claim against Shofner did not rest merely on the theory of strict liability but on a negligence theory as well. Because the more realistic and significant claim was negligence, Mosher relied only on a legal encyclopedia to justify his strict liability claim. This type of cursory research is not commended, but it does not justify a denial of admission to practice. Therefore, Mosher's statement in his brief about strict liability of pharmacists was not misleading and is no support for the district court's decision to deny Mosher's application.

As to the charge concerning the Shofner proposal, Mosher's brief had the following to say.

There is nothing unethical or even uncommon about making agreements with parties opponent who then remain in the suit. "Mary Carter" type agreements, in which one defendant settles with the plaintiff but remains in the suit as a nominal defendant have been common for many years in many jurisdictions. The fact that Upjohn does not like the idea of its co-defendants reaching a separate peace with the plaintiff does not make the practice unethical or a fraud on the Court.

J.A. 55. The district court took offense at Mosher's not having provided any contrary authority to these statements. Further, the district court believed that Mosher was under a duty to cite *Elbaor v. Smith*, 845 S.W.2d 240 (Tex.1992), at this point in his brief.

The district court's belief that Mosher had a duty to cite *Elbaor* is incorrect. A lawyer has a duty to cite controlling adverse authority to the court. Model Code of Professional Responsibility EC 7–23; Model Code of Professional Responsibility DR 7–106(B)(1);

Model Rules of Professional Conduct Rule 3.3(a)(3). However, *Elbaor* was not adverse authority. It in no way cast doubt on Mosher's claim that the Shofner proposal was ethical. The *Elbaor* court held that Mary Carter agreements as it defined them were void as violative of the public policy of Texas. It defined Mary Carter agreements as an agreement whereby a "settling defendant retains a financial stake in the plaintiff's recovery and remains a party at the trial of the case." *Id.* at 247.

> A Mary Carter agreement exists, under our definition, when the plaintiff enters into a settlement agreement with one defendant and goes to trial against the remaining defendant(s). The settling defendant, who remains a party, guarantees the plaintiff a minimum payment, which may be offset in whole or in part by an excess judgment recovered at trial. This creates a tremendous incentive for the settling defendant to ensure that the plaintiff succeeds in obtaining a sizable recovery, and thus motivates the defendant to assist greatly in the plaintiff's presentation of the case....

*Id.* (citations omitted). The Shofner proposal did not have either indicia of a Mary Carter agreement as defined by *Elbaor*. The proposed agreement would not have given Shofner a financial stake in the plaintiff's recovery. Whether or not the plaintiff recovered, Shofner would not benefit financially. Nor would Shofner remain a party at the trial of the case. He was to be dismissed from the case. Because the Shofner proposal does not even arguably fall within the *Elbaor* prohibition, it cannot be considered adverse authority that Mosher was under a duty to cite in his brief.

It is clear that Mosher was using the term "Mary Carter agreement" much more broadly than the court in *Elbaor* and that this choice of analogies was unwise. However, it is also clear that Mosher was not trying to mislead the court and any confusion his reference to " 'Mary Carter' type agreements" may have caused was inadvertent. A colloquy between Mosher and the district court that took place at the hearing before the *Elbaor* case was even mentioned by the court

or Upjohn's counsel demonstrates that Mosher had no intent to mislead the court.

> MOSHER: And in terms of making an agreement like [the one offered to Shofner], a Mary Carter agreement, the only requirement is if before you go, if Upjohn asks for that agreement to be disclosed in an interrogatory they have the right to a copy of the agreement....

> COURT: Mary Carter agreements are legal in Texas?

> MOSHER: Yes, sir, Your Honor. The Mary Carter agreements are legal in Texas. The only thing is they must be disclosed. There are certain limits on Mary Carter agreements in terms of who pays for what when you are actually paying somebody for something. There is a recent Supreme Court decision, very recent, in the last two or three weeks, month or so, that puts certain limits on Mary Carter agreements in what you can or cannot do; but for the, there is nothing that remotely limits this Mary Carter agreement. It is absolutely legal and perfectly above board.

J.A. 387–89. Mosher revealed that a recent Texas Supreme Court case, presumably *Elbaor*, had placed certain limits on agreements where the settling party receives a financial benefit but that case did not limit the proposed Shofner agreement. Therefore, Mosher was not trying to hide the *Elbaor* case from the court, but rather believed, correctly, that *Elbaor* did not limit the Shofner proposal. Thus, the only offense Mosher committed in relation to the arguments concerning the Shofner proposal was that he used the term "Mary Carter" agreement too broadly to refer to a settlement agreement with one defendant who has not been paid anything but remains a party to the lawsuit for some amount of time. Mosher's mistaken misuse of legalese is no support for the district court's decision.

As to the charge that the proposed settlement agreement was unethical, the following colloquy between the district court and Mosher took place.

> COURT: By saying that [referring to the December 9, 1992, settlement demand letter], that meant that you were telling Upjohn that you would not represent any

other people who wanted to bring suit against Upjohn for Halcion?

MOSHER: Yes, Your Honor, absolutely. And that is absolutely proper in the state of Texas.

COURT: Yes?

MOSHER: Your Honor, there is no prohibition against that in the state of Texas.... I assure you it is not the law in Texas, and such agreements are not uncommon in Texas. There is no prohibition anywhere. There may be a prohibition in Michigan, but I was unaware of the prohibition.... It is certainly nowhere stated in the Texas Rules of Conduct which govern the conduct of lawyers in Texas.

J.A. 374–77. Mosher was wrong. Texas Disciplinary Rule of Professional Conduct 5.06(b) provides:

A lawyer shall not participate in offering or making ... an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a suit or controversy....

Because apparently one of the terms of the proposed settlement agreement was that Mosher would not represent any other Halcion plaintiffs, a restriction on his right to practice, Mosher violated Rule 5.06.

The district court was concerned with this ethical violation but did not decide whether it was sufficient reason to deny Mosher's application to practice before the Western District of Michigan. Instead, the district court was troubled by Mosher's statements during the hearing that the proposed settlement agreement was ethical under Texas standards, when in fact it was not. It is true that Mosher made an incorrect statement of the Texas ethical standards; however, there is no indication that he did so deliberately in an attempt to mislead the court. Mosher was denied any opportunity to research that issue and deliberate on it because he had not seen Upjohn's charges that the proposed settlement agreement was unethical until the day of the hearing. Therefore, when the district court quizzed Mosher on a subject that he had not studied, Mosher failed the test. It is true that an attorney should know the ethical rules to which the attorney is bound, but in this case the apparent problem was not that

Mosher had done something unethical (in another jurisdiction, in another case, at the request of Upjohn), but rather that the district court thought that Mosher intentionally misled the court. There is nothing in the record to support the district court's finding in that respect, and therefore the denial of Mosher's application on that basis was an abuse of discretion. However, we do not in any manner condone Mosher's conduct with regard to the Shofner proposal and the proposed settlement agreement.

Because the district court's decision must be reversed on this ground, we need not address Mosher's constitutional due process argument.

### III.

For the reasons stated, the district court's order denying Mosher's application for admission to practice before the United States District Court for the Western District of Michigan is REVERSED, and this case is REMANDED to the district court.