NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0016n.06

**Case No. 18-1131**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jan 14, 2019
DEBORAH S. HUNT, Clerk

In Re: FRANK J. LAWRENCE, JR.,

Petitioner-Appellant.

)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

O P I N I O N

BEFORE:    COLE, Chief Judge; SUHRHEINRICH and MOORE, Circuit Judges.

COLE, Chief Judge.    Petitioner-Appellant Frank J. Lawrence, Jr. seeks review of the district court's decision denying him admission to the bar of the Western District of Michigan. Because the district court did not abuse its discretion, we affirm.

I.

Lawrence graduated from an accredited Michigan law school and passed the Michigan bar exam in 2001. *See Lawrence v. Chabot*, 182 F. App'x 442, 445 (6th Cir. 2006). As part of Lawrence's application for a license to practice law in Michigan, he truthfully noted that he had a pending misdemeanor charge for interfering with a police officer in violation of a Bloomfield Township ordinance. *Id.* The facts giving rise to the misdemeanor charge are as follows:

> Lawrence's conviction was for circumstances that took place on August 19, 2000. Lawrence's brother, Christian Lawrence, called 911 to report that his father, Frank Lawrence, Sr., had struck him with a board. . . . The police arrived at the house and looked in the doorway to see that Christian was in the home holding his eye. Christian stepped outside where paramedics tended to him. Police next ordered Lawrence's father to exit the home, at which point he was arrested. . . . An officer

called to Lawrence to tell him to step outside the home[.] . . . Lawrence refused to exit, stating, "Fuck you," in addition to citing some case law, and demanding that the officers obtain a warrant before entering. The officer informed Lawrence of the need to check for additional suspects, victims, or evidence, but Lawrence refused to allow entry into the home, and blocked the door by standing in front of it. The officer then pulled Lawrence out onto the porch . . . [and] Lawrence was . . . placed under arrest.

*Lawrence v. 48th Dist. Court*, 560 F.3d 475, 477 (6th Cir. 2009). As a result of the then-unresolved charge, Lawrence's application for a Michigan law license was put on hold pending the conclusion of the criminal matter. In April of 2002, a jury convicted Lawrence of violating the Bloomfield Township ordinance. *48th Dist. Court*, 560 F.3d at 478. In June of the same year, he was sentenced to twelve months of non-reporting probation and 500 hours of community service. *Id.*

Once the criminal charge was resolved, the state bar began processing Lawrence's application. Because of "various concerns regarding [Lawrence's] litigation history and financial difficulties," the State Bar of Michigan's Character and Fitness Committee referred his application to a district committee to conduct an interview. *Chabot*, 182 F. App'x at 446. Lawrence filed a motion to adjourn the interview, arguing that violations of township ordinances should not be considered criminal cases. His motion was denied, and Lawrence thereafter withdrew his bar application. *Id.* He then filed a complaint in federal district court naming a variety of defendants, including the Michigan Board of Law Examiners (the "Board"), the State Bar of Michigan (the "State Bar"), and various officials of the Board and the State Bar. *See generally id*. Lawrence sought declarations that certain state bar rules were unconstitutional and alleged that the Board and the State Bar violated his First and Fourteenth Amendment rights in processing his 2001 application. The district court dismissed Lawrence's claims and this court affirmed. *Id.* at 445.

In 2003, Lawrence began operating a website called "StateBarWatch." *Lawrence v. Welch*, 531 F.3d 364, 366 (6th Cir. 2008). On the website, Lawrence criticized the State Bar and the Board. *Id.* For example, Lawrence accused the State Bar's executive director of plagiarism,

alleged that various individuals made false or contradictory statements to courts, and stated that one member of the Board had previously been arrested and convicted for drunk driving. *Lawrence v. Berry, et al.*, Case No. 5:06-cv-134, Compl., R. 1, PageID 36–37 (Sept. 8, 2006 W.D. Mich.). Lawrence also posted on the website that he picketed the law office of a Board member—who was involved in one of Lawrence's adverse character and fitness determinations—with a sign that said, "I do not recommend [the Board attorney]." *Id.* at PageID 37. He updated the website at various times, including to make an assertion that "widespread dishonesty and corruption" existed within the State Bar. *Lawrence v. Raubinger, et al.*, Case No. 1:10-cv-467, Am. Compl., R. 19, PageID 202 (Jan. 18, 2018 W.D. Mich.).

Lawrence reapplied for admission to the Michigan bar in 2004. *See Welch*, 531 F.3d at 366. As part of the application process, he was interviewed by three members of a State Bar District Character and Fitness Committee: David H. Baum, Randy A. Musbach, and Sonal Hope Mithani. *Id.* During the interview, Lawrence stated "that he had little respect for the Michigan state court system, and he expressed the view that the federal courts are the 'guardians of the constitution' and that the Michigan state court system fails adequately to protect individuals' constitutional rights." *Id.* After the interview, the committee issued a report and recommendation to the State Bar stating: "The Committee does not believe that [Lawrence] has shown by clear and convincing evidence that he currently possesses the requisite good character and fitness to be recommended to the practice of law in this state." *Id.* at 366–67. The committee expressed concern about licensing "someone who, even before he has handled his first case as a member of the bar, has effectively written off such a huge component of the justice system." *Id.* at 367.

After the committee issued the report and recommendation, Lawrence engaged in a series of actions:

> Lawrence made several communications to the employers of the members of the District Committee. He telephoned the University of Michigan Law School, where Baum was the Assistant Dean of Student Affairs. Lawrence told Baum's assistant that he wanted to address the student bar association to let them know how poorly he thought he had been treated. Lawrence also sent a letter to a board member of the legal services organization for which Mithani was a director. In the letter, Lawrence stated how poorly he had been treated and how Mithani had manipulated Lawrence's stated views about the state court system.

*Id*. at 367.

The report and recommendation was sent directly to the Board, and the Board voted to accept it. *Id*. Lawrence thereafter requested a hearing, which was held in April 2006. *Id*. At the hearing, Lawrence was questioned about his communications with Baum's and Mithani's employers, and he denied that they were inappropriate. *Id*. In June 2006, the Board issued an opinion denying Lawrence's application for admission. *Id*. Soon after, Lawrence sent a letter to a member of the Michigan Civil Rights Commission, discussing what he believed to be the hypocrisy of one of the Board members involved in denying his admission. The letter stated in part:

> I have noticed that this type of hypocrisy is commonplace among many black civil rights activists. They believe that they have the right to speak out, but for everyone else, there exists a double standard. I truly believe that if I were black, I never would have been treated this way.

*Berry*, Letter, R. 1-3, PageID 25.

A few months later, in September 2006, Lawrence filed a lawsuit in federal district court, naming Baum, Musbach, and Mithani as defendants, along with the executive director of the State Bar and the president of the Board. *See generally Welch*, 531 F.3d 364. He argued, among other things, that the denial of his bar application violated his First and Fourteenth Amendment rights

and sought declaratory and injunctive relief requiring defendants to issue him a license to practice law. The district court dismissed Lawrence's claims and this court affirmed. *Id.* at 366–67.

Lawrence filed another lawsuit in federal district court against various members of the Board in 2009, alleging that he had filed a third application for admission to the Michigan bar, which was pending, and describing his complaint as a "protective action" challenging the potential denial of his third application and any future fourth application. *See Lawrence v. Parker, et al.*, No. 17-1319, Order, p. 1–2 (6th Cir. Dec. 22, 2017). The same year, the Board held a hearing regarding his third application, and before the hearing took place, Lawrence mailed hundreds of questionnaires to the Board members' former clients and acquaintances, seeking any information that would "call into question the [Board] members' ability to serve the public." *Raubinger*, Am. Compl., R. 19, PageID 201. Subsequently, Lawrence's third petition was denied, and he filed a fourth. *Parker*, No. 17-1319, Order, p. 2. In regard to his most recent application, the State Bar and the Board certified Lawrence's good moral character to practice law, but refused to certify his educational fitness because his bar exam score became stale after three years. *Id.* Lawrence sought to amend his 2009 case to address the constitutionality of Michigan's rule regarding stale scores, and the case is currently pending before the Western District of Michigan. *See generally Parker*, Case No. 1:09-cv-95 (W.D. Mich. Feb. 6, 2009).

Also in 2009, Lawrence filed his first application for admission to practice law in the United States District Court for the Western District of Michigan. *See In re: Frank J. Lawrence, Jr.*, No. 09-1636, Order, p. 1 (6th Cir. Dec. 2, 2009). The Western District of Michigan denied his petition in accordance with local rules because Lawrence had not first been admitted to practice law in any state. Lawrence appealed his denial and this court affirmed. *Id.* at 2. Lawrence has since been admitted to practice law in the District of Columbia. Lawrence alleges that he has also

been granted admission to the United States Courts of Appeals for the Sixth, Seventh, Tenth, Eleventh, and District of Columbia Circuits, as well as the United States District Courts for the Eastern District of Michigan and the Northern District of Illinois, and the United States Tax Court.

On October 5, 2017, Lawrence filed his second application for admission to practice law in the Western District of Michigan—the subject of this appeal. Because of Lawrence's criminal conviction, his application was forwarded to the Chief Judge of the Western District of Michigan. According to Lawrence, a State Bar investigator told him that the Chief Judge's law clerk left a message for the investigator that day, seeking information contained within the State Bar's confidential files. Lawrence alleges that he then called the clerk, who told him that the Chief Judge instructed her to gather information about Lawrence.

The Chief Judge appointed a three-judge panel to review Lawrence's application. The panel held a hearing on December 13, 2017, at which Lawrence appeared with counsel. Before the hearing, Lawrence sent a letter requesting: (1) that the Chief Judge's clerk be required to attend the hearing and provide testimony regarding her alleged instruction to obtain confidential information from the State Bar; and (2) a document "akin to a bill of particulars" providing the precise reasons why Lawrence's application was not administratively approved by the Chief Judge. The panel did not respond to Lawrence's letter.

At the hearing, the panel denied Lawrence's request for the clerk to testify. On February 2, 2018, the three-judge panel issued a memorandum opinion and order denying Lawrence's petition for admission. Lawrence alleges that Michigan licensing officials thereafter revoked his character clearance for the state bar, citing the panel's decision. Lawrence timely appealed the panel's order.

II.

We review a denial of an application for admission to practice before a district court for abuse of discretion. *Application of Mosher*, 25 F.3d 397, 400 (6th Cir. 1994). A finding of abuse of discretion requires "a definite and firm conviction that the trial court committed a clear error of judgment." *Davis by Davis v. Jellico Cmty. Hosp. Inc.*, 912 F.2d 129, 133 (6th Cir. 1990) (citations omitted). A court "abuses its discretion if it bases its ruling on an erroneous view of the law or a clearly erroneous assessment of the evidence." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010).

At the outset, we reject Lawrence's argument that it was reversible error for the district court to deny his request to have the Chief Judge's clerk testify at his hearing. Such testimony is of no bearing on Lawrence's character, the subject of the hearing. We thus decline to remand for further fact-finding on this issue, and similarly decline to refer the Chief Judge to the Circuit Executive's Office.

We now turn to the heart of the appeal, the district court's decision denying Lawrence admission to its bar. A district court has both statutory and inherent authority to control the membership of its bar. In terms of statutory authority, "Congress has provided in 28 U.S.C. § 2071 that the district courts may prescribe rules for the conduct of their business. It is clear from 28 U.S.C. § 1654 that the authority provided in § 2071 includes the authority of a district court to regulate the membership of its bar." *In re Desilets*, 291 F.3d 925, 929 (6th Cir. 2002) (quoting *Frazier v. Heebe,* 482 U.S. 641, 652 (1987) (Rehnquist, J., dissenting)); *see also* Fed. R. Civ. P. 83 ("After giving public notice and an opportunity for comment, a district court, acting by a majority of its district judges, may adopt and amend rules governing its practice."); *Greer's Refuse Serv., Inc. v. Browning-Ferris Indus. of Delaware*, 843 F.2d 443, 446 (11th Cir. 1988) ("[F]ederal

district courts have clear statutory authority to promulgate rules governing the admission . . . of the attorneys who practice before them."); *Brown v. McGarr*, 774 F.2d 777, 782 (7th Cir. 1985) ("[E]very federal court which has construed 28 U.S.C. §§ 1654, 2071 and Fed. R. Civ. P. 83 has held that they permit a federal district court to regulate the admission of attorneys who practice before it.") (citations omitted).

The Western District of Michigan has acted under its statutory authority and prescribed such rules. Relevant here, Local Rule 83.1(c) provides that if an applicant has been convicted of a crime, "the Chief Judge shall make an independent determination as to whether the applicant is qualified to be entrusted with professional matters and to aid in the administration of justice as an attorney and officer of the [c]ourt." W.D. Mich. Local Civ. R. 83.1(c)(ii) (Feb. 1, 2018).[1] The rules further provide that the Chief Judge "may grant or deny the application for admission" or "[a]lternatively . . . refer the application to a three-judge panel[.]" W.D. Mich. Local Civ. R. 83.1(d)(iv).

In addition to statutory authority, it has long been settled that district courts have "inherent authority to deny an attorney's application for admission to practice before the district court." *Application of Mosher*, 25 F.3d at 399–400. As early as 1824, the Supreme Court held that federal courts have the power to control admission to their bar: "The power is one which ought to be exercised with great caution, but which is, we think, incidental to all Courts, and is necessary for the preservation of decorum, and for the respectability of the profession." *Ex parte Burr*, 22 U.S. 529, 531 (1824); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) ("[T]he Court has held that a federal court has the power to control admission to its bar and to discipline attorneys who appear before it."). "Accordingly, the exercise of the authority to admit, deny, or suspend an

---

[1] The local rules were substantially revised effective January 1, 2019. Attorney admission to practice is now found at Local Gen. R. 2.1.

attorney is left to the discretion of the district court." *Stilley v. Bell*, 155 F. App'x 217, 219 (6th Cir. 2005) (citations omitted).

But merely because a court has authority to regulate its bar does not mean that its authority is without limitation. While a court can require qualifications such as good moral character before admitting an applicant to the bar—as virtually all states, and the Supreme Court, do—any qualification "must have a rational connection with the applicant's fitness or capacity to practice law." *Schware v. Bd. of Bar Exam. of State of N.M.*, 353 U.S. 232, 239 (1957); *see also Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 160 (1971). Obviously an applicant cannot be excluded merely because of his political affiliation, religion, race, or gender. *See Schware*, 353 U.S. at 239. We think it is obvious too, that a nearly 17-year-old misdemeanor conviction cannot be the sole basis of denial. *See In re Dreier*, 258 F.2d 68, 69 (3d Cir. 1958) ("[W]e think the court erred in giving controlling weight to the appellant's previous convictions and little or no weight to the evidence of his subsequent rehabilitation and present good moral character.").

Instead, the court must balance the "competing interests at stake in a decision to admit an attorney to practice before a district court." *Stilley*, 155 F. App'x at 219–20. "On the one hand, there are the interests of the applicant attorney in being able to practice his profession and the interests of clients in being represented by counsel of their choosing." *Application of Mosher*, 25 F.3d at 400. And on the other hand:

> [T]he public interest requires the court to consider whether the applicant attorney will promote the administration of justice. "[I]t is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the bench should be preserved." [*Burr*, 22 U.S. at 530.] Thus, a district court should consider whether the applicant attorney possesses the professional and ethical competence expected of an officer of the court.

*Id.*

We cannot say that the district court abused its discretion in balancing these interests here. The three-judge district court panel first discussed Lawrence's previous criminal conviction, and correctly noted that it was a number of years ago, but found that his conduct following the conviction, including his behavior before the panel, was inconsistent with what is expected of an officer of the court. The panel had the opportunity to observe Lawrence's demeanor during the hearing and found that he was not credible in discussing his criminal conviction. Specifically, the panel found that he too "easily offer[ed] exculpatory information, while struggling to recall basic facts concerning his offense conduct." (Order, R. 6, PageID 136–37.)

And the district court did not rely solely on Lawrence's criminal conviction in reaching its decision. The panel considered Lawrence's conduct since the conviction and in doing so did not make a clear error of judgment. Lawrence has a history of personally attacking decisionmakers whose decisions he does not like. After the District Character and Fitness Committee issued a report recommending that he be denied admission, Lawrence called the University of Michigan— one of the committee members' employers—complaining that he was treated unfairly and asking to speak to students about the committee member's conduct. He also wrote a letter to a legal services organization—the employer of another committee member—complaining about the committee member treating him unfairly. And when the Board issued an opinion denying him admission, Lawrence sent a letter to a member of the Michigan Civil Rights Commission to complain about one of the Board members' alleged hypocrisy. When he became upset with the way the Board handled his petition, he picketed the law office of the president with a sign that could discourage clients from retaining the Board member's services.

And even before an adverse decision was reached on his third application for admission into the Michigan bar, Lawrence mailed hundreds of questionnaires to former clients and

acquaintances of the Board members on the committee responsible for making a decision regarding his character and fitness, attempting to dredge up negative information about them. The district court acted within its discretion in relying on these instances to conclude that Lawrence "has a long history of engaging in inappropriate and unprofessional conduct" that calls into question his ability to be "entrusted with professional matters and to aid in the administration of justice as an attorney and officer of the [c]ourt." (Order, R. 6, PageID 142) (quoting W.D. Mich. Local Civ. R. 83.1(c)(ii).)

The record is clear that the admission decision is not based on the content of Lawrence's complaints about the Board or State Bar officials, nor on his decision to speak out against them. Instead, the panel was concerned with the manner in which Lawrence addressed his grievances. (*Id.* at PageID 141 ("The relevant issue here is not whether he . . . enjoys a First Amendment right to freedom of speech – of course he does. . . . The [c]ourt is concerned, however, with the manner in which he addressed his grievances with [the Board and State Bar] officials.").) The district court's concerns about how Lawrence addresses his grievances are rationally related to his fitness to practice law—if he seeks judicial misconduct proceedings every time a judge makes a decision adverse to his interests, or pickets the law offices of opposing counsel who upset him, or posts disparaging comments about lawyers with whom he disagrees, his professional competency would be called into question. Indeed, Lawrence admitted during his hearing that some of these past instances of misconduct demonstrate less than good judgment. We are thus satisfied that the district court did not abuse its discretion in denying Lawrence admission.

Lawrence raises three primary arguments in an attempt to persuade us to reverse the panel's decision. First, he contends that it was error for the panel to rely on past conduct that he did not have a chance to address at the hearing. In support of this argument, he quotes the panel's decision

discussing two matters: (1) the letter in which Lawrence stated if he were black he would not have been treated this way, and (2) certain of his website posts. But Lawrence did have a chance to address the letter—in fact, he raised it at the hearing. It was not error for the panel to look at publicly available information to delve further into this incident when Lawrence brought it to their attention at the hearing. As for the website posts, the record supports the panel's decision denying Lawrence admission even if we do not consider the posts to which he objects. The instances exhibiting poor judgment discussed above were all mentioned at the hearing and thus Lawrence had a chance to address them. (*See* Hr'g Tr., R. 4, PageID 74–76 (picketing Board member's law office); *id.* at PageID 78 (contacting University of Michigan); *id.* at PageID 81 (writing letter to legal services organization); *id.* at PageID 81, 83 (writing letter to Civil Rights Commission); *id.* at 87–88 (mailing questionnaires to former clients and acquaintances of Board members).) We therefore reject Lawrence's request to remand this matter for further proceedings.

Turning to Lawrence's second argument, he objects to the panel's reliance on arguably stale conduct in reaching its adverse decision. Lawrence points out that the majority of the conduct discussed in the panel's decision occurred years ago and contends that since then he has been a "model citizen," as evidenced by his admission into the bars of various courts. As an initial note, merely because "other courts have admitted [Lawrence] to practice in their jurisdictions" does "not compel the conclusion that the Western District of Michigan abused its discretion in not allowing [Lawrence] to practice there." *Stilley*, 155 F. App'x at 224. "[O]ne court's decision to admit an applicant does not diminish another court's discretion to refuse to do so." *Id.* As to the fact that the panel considered conduct that is many years old, Lawrence points to no authority finding that doing so amounts to a clear error of judgment. And in any event, the district court made clear that it also considered Lawrence's conduct at the hearing in coming to its ultimate conclusion, noting

that Lawrence was more interested in blaming others than accepting responsibility for his actions and finding that his statements that he has changed are not credible. Even if we would reach a different conclusion reviewing Lawrence's petition de novo—as it appears we did, given that he is admitted in our court—we cannot say the district court abused its discretion.

As for Lawrence's final argument, he contends that the district court's decision was impermissibly based on the exercise of his First Amendment rights. It is, of course, axiomatic that Lawrence has a First Amendment right to criticize public officials. *See, e.g.*, *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966) ("Criticism of government is at the very center of the constitutionally protected area of free discussion."). But it is equally true that "the First Amendment does not prohibit laws justified by a valid governmental interest when those laws do not reflect an intent to control the content of speech but rather incidentally limit unfettered exercise of the right." *Chabot*, 182 F. App'x at 453 (citing *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)). And as the Supreme Court stated in reference to character qualifications for a state bar, "it is difficult, indeed, to imagine a view of the constitutional protections of speech . . . which would automatically . . . exclude all reference to prior speech . . . on such issues as character, purpose, credibility, or intent." *Konigsberg*, 366 U.S. at 51; *see also Wadmond*, 401 U.S. at 167 (upholding New York's character and fitness screening against First Amendment challenges).

Here, the district court made clear that Lawrence's denial was not based on his speech at all, but rather on the manner in which he addressed his grievances with the Board and the State Bar officials. Unlike the petitioner in *Konigsberg*, upon which Lawrence relies for support, Lawrence did not merely criticize the government in newspaper editorials. 353 U.S. 252, 268–69 (1957) (noting that the editorials were "not unusually extreme" and were "fairly interpreted only [to] say that certain officials were performing their duties in a manner that, in the opinion of the

writer, was injurious to the public"). It is not the fact that Lawrence criticized bar officials that is concerning. He certainly has a First Amendment right to do so. Nor is it the content of Lawrence's speech that matters. Of crucial importance is the way in which Lawrence chose to criticize the officials—calling their employers, sending letters to their former clients and friends, and picketing their places of employment. Surely the district court is constitutionally entitled to look at such conduct in deciding whether Lawrence should be admitted "to a profession dedicated to the peaceful and reasoned settlement of disputes between men, and between a man and his government." *Wadmond*, 401 U.S. at 166.

In sum, the district court did not abuse its discretion in denying Lawrence admission to its bar, based on its local rule allowing the panel to decide whether an applicant is "qualified to be entrusted with professional matters and to aid in the administration of justice as an attorney and officer of the [c]ourt." W.D. Mich. Local Civ. R. 83.1(c)(ii). We are mindful of the Supreme Court's admonition in *Konigsberg* that such a "vague qualification, which is easily adapted to fit personal views and predilections, can be a dangerous instrument for arbitrary and discriminatory denial of the right to practice law." 353 U.S. at 263. But we are satisfied here that the denial was not arbitrary or discriminatory. Because we cannot say that the district court's decision "was irregular, or was flagrantly improper," *D.H. Overmyer Co. v. Robson*, 750 F.2d 31, 33 (6th Cir. 1984) (quoting *Burr*, 22 U.S. at 531), we affirm.

III.

For the foregoing reasons, we affirm the denial of Lawrence's petition for admission to the Western District of Michigan.