**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 06a0347n.06**
**Filed: May 16, 2006**

**Nos. 05-1082, 05-1397**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FRANK J. LAWRENCE, JR.,                      )
                                             )
       Plaintiff-Appellant,            )
                                             )
v.                                           )
                                             )    ON APPEAL FROM THE UNITED
                                             )    STATES DISTRICT COURT FOR THE
RAE LEE CHABOT, in her official capacity     )    WESTERN DISTRICT OF MICHIGAN
and all Board Members of the Michigan Board  )
of Law Examiners; MICHIGAN BOARD OF          )
LAW EXAMINERS; JOHN BERRY, in his            )
official capacity as Executive Director of the )
State Bar of Michigan; STATE BAR OF          )
MICHIGAN; MAURA D. CORRIGAN, in her
official capacity and all Justices of the
Michigan Supreme Court; DIANE VAN
AKEN, in her individual capacity; NICOLE
ARMBRUSTMACHER, in her individual
capacity,

       Defendants-Appellees.


Before: NELSON, DAUGHTREY, and ROGERS, Circuit Judges.


**ROGERS, Circuit Judge.** Plaintiff Frank J. Lawrence, Jr., brought suit pursuant to 42

U.S.C. § 1983 against various officials and entities of the State of Michigan, alleging that those

individuals unconstitutionally deprived him of admission to the State Bar of Michigan. The district

court denied the relief Lawrence sought, and Lawrence now challenges numerous rulings of the

district court.  We affirm.

**I.**

Frank J. Lawrence, Jr., graduated from the University of Detroit, an accredited law school

in the state of Michigan, and, as required, filled out an "Affidavit of Personal History" prior to

sitting for the July 2001 Michigan bar examination.  JA 1344.  In that affidavit, he truthfully noted

that a misdemeanor charge of interfering with a police officer in Bloomfield Township was still

pending against him.  JA 1347, 1351.  As a result, even though Lawrence passed the bar

examination, his application for admission to the state bar was not immediately processed, in

accordance with Rule A5 of the bar's Rules of the Standing Committee on Character and Fitness.

JA 120.  Rule A5 states as follows:

> If an applicant has criminal charges pending, the district committee referral should
> be delayed until the pending proceeding is concluded.  An applicant may request that
> a referral be made prior to the final adjudication of criminal charges, and the request
> should be granted provided that a district committee report and recommendation does
> not issue until the criminal matter is concluded.

JA 924.

In connection with his defense against the misdemeanor charge, Lawrence filed suit against

Bloomfield Township in both state and federal court, seeking to enjoin the criminal prosecution.

JA 1324.  Those efforts proved unsuccessful, however, and the matter was scheduled for trial.

Months before the start of the proceedings, the township's attorney, Thomas Ryan, a former

president of the State Bar of Michigan, offered to allow Lawrence to enter a plea under advisement. According to Ryan, "Under Michigan procedure, such a plea does not result in a conviction on the defendant's record, and the charge is dismissed, if the defendant complies with terms set by the court during a specific period of time." JA 1324. Lawrence rejected the offer. JA 1324.

Over a year later, Lawrence's attorney approached Ryan immediately before the commencement of the jury trial to discuss the possibility of a "plea under advisement." JA 1324. Bloomfield Hills District Judge Edward Avadenka was present, but Lawrence was not present. JA 1324. Ryan noted that, although Lawrence had once before rejected such an offer, the township would consider re-extending such leniency if Lawrence found such an option acceptable. At that time, Judge Avadenka also "indicated that, if the parties resolved the case with a plea under advisement, he would communicate to the Character and Fitness Committee [of the state bar] that a plea under advisement constitutes a conclusion of the case," thus permitting the committee to act upon Lawrence's bar application. JA 1324-25. Lawrence again rejected the offer, however, and the matter proceeded to trial. Lawrence was found guilty of the charge of interfering with a township officer. JA 1317, 1325.

A week after his conviction, Lawrence wrote a letter to defendant Diane Van Aken, the manager of the Character and Fitness Department of the State Bar of Michigan, informing her that the criminal charge that had previously held up consideration of his application had been resolved. JA 1317. In that letter, Lawrence accused Judge Avadenka of improperly using Lawrence's "law license as a bargaining chip" by allegedly offering to speak to the Character and Fitness Committee

on Lawrence's behalf only if Lawrence "dropped the civil case against the Township." JA 1317.

In light of that inflammatory allegation of judicial misconduct, defendant Nicole Armbrustmacher, an investigator in the Character and Fitness Department, telephoned Judge Avadenka to verify the assertions in Lawrence's letter. JA 1312. Judge Avadenka explained the actual content of the plea negotiations to Armbrustmacher and stated that while he "did offer to advise the Character and Fitness Committee that the case was concluded, Mr. Lawrence's law license was not used as a bargaining chip in any way." JA 1336.

Meanwhile, with the criminal proceedings against Lawrence concluded, the state bar began processing Lawrence's application. Because of various concerns regarding the plaintiff's litigation history and financial difficulties, the Standing Committee on Character and Fitness referred the application to a district committee to conduct an interview with Lawrence. JA 1397-1400. Lawrence responded by filing a motion for adjournment of the interview, alleging for the first time that, under Michigan law, violations of township ordinances should not be considered criminal cases. JA 1403-04. After the request for adjournment was denied, JA 1410, Lawrence wrote to Van Aken withdrawing his bar application. JA 1411-13.

Lawrence later filed a new complaint in federal district court naming multiple defendants: Rae Lee Chabot, the chairperson of the Michigan Board of Law Examiners, sued only in her official capacity; the Michigan Board of Law Examiners; John Berry, the executive director of the State Bar of Michigan, sued only in his official capacity; the State Bar of Michigan; Maura Corrigan, then the

Chief Justice of the Michigan Supreme Court, sued only in her official capacity; Van Aken, sued only in her individual capacity; and Armbrustmacher, sued only in her individual capacity. In the complaint, Lawrence sought declarations that certain rules of the state bar were unconstitutional, that the state bar and the Board of Law Examiners violated Lawrence's First and Fourteenth Amendment rights to engage in expressive conduct (by challenging his criminal misdemeanor charge), and that Van Aken and Armbrustmacher violated those same rights and his right of personal privacy. He further sought monetary damages from Van Aken and Armbrustmacher. He also sought injunctive relief prohibiting the use of private information or expressive conduct protected by the First and Fourteenth Amendments in determining an applicant's fitness to practice law within the State of Michigan. Concomitantly, Lawrence also sought to enjoin the Board of Law Examiners and the State Bar of Michigan from interfering with his attempts to practice law within the state. JA 11-39.

All defendants eventually filed motions to dismiss with the district court, raising defenses based on various forms of immunity, lack of standing, lack of ripeness, and failure to state claims upon which relief could be granted. JA 40-41, 169, 245. Lawrence also filed his own pretrial motion seeking a temporary restraining order and a preliminary injunction based upon his belief that the defendants threatened to chill protected First Amendment freedoms by having no suitable guidelines or procedures to evaluate a bar applicant's "good moral character." JA 58.

These various motions were first referred to a magistrate judge for a preliminary report and recommendation. After a comprehensive analysis of the claims and applicable law, Magistrate Judge Joseph Scoville recommended that Lawrence's motion be denied, that all claims against the

State Bar of Michigan and the State Board of Law Examiners be dismissed due to Eleventh Amendment immunity, and that the claims against Chief Justice Corrigan and other members of the state supreme court be dismissed on the basis of legislative immunity. Magistrate Judge Scoville also recommended that all claims for injunctive relief against defendants Berry, Van Aken, Armbrustmacher, and Chabot be dismissed: Lawrence's facial challenges to the attorney-admission system failed to state a claim upon which relief could be granted, and his as-applied challenges failed because Lawrence lacked standing and because his claim was not ripe. JA 306-24. As noted by the magistrate judge, "[i]f the foregoing recommendations are adopted by the court, only the claims for damages against defendants Van Aken and Armbrustmacher in their personal capacity will remain pending." JA 324.

Lawrence filed objections to the report and recommendation with the district court. In addition, he moved that both Magistrate Judge Scoville and District Judge David McKeague be disqualified from the case based upon their service on the State Bar of Michigan's Standing Committee on United States Courts. Judge McKeague denied the motion for disqualification and adopted the report and recommendation of the magistrate judge in all respects. JA 517-23.

Lawrence then filed a notice of appeal concerning the denial of his request for a preliminary injunction, JA 524, and the matter was transmitted to this court for appellate review. In March 2004, this court denied Lawrence's request for a stay of all district court proceedings pending appeal. JA 763-64. Seven months later, this court affirmed the denial of Lawrence's motion for a preliminary injunction. In doing so, we noted that Lawrence's allegations of bias on the part of the magistrate

judge and the district judge were not properly before us on that appeal. JA 1133. We also denied Lawrence's motion for injunctive relief and the defendants' motions to dismiss that appeal. JA 1130-33.

Simultaneously with the perfection of his appeal to this court regarding the denial of his motion for a preliminary injunction, Lawrence filed a "Request For Clerk's Entry Of Default" against Van Aken and Armbrustmacher, given those defendants' failure "to file an answer to the complaint within 10 days of [the district court's] denial of their Motions to Dismiss." JA 525. After the clerk entered defaults, JA 526, the individual defendants moved to set aside the defaults for good cause. JA 527-29. Although Lawrence also filed a motion for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, JA 534, Magistrate Judge Scoville set aside the entry of default after concluding "that defendants' failure to plead after partial denial of their motion to dismiss was not willful, that defendants have at least one meritorious defense, and that plaintiff suffered absolutely no prejudice by the brief delay in filing an answer." JA 577. The district court then affirmed the magistrate judge's order in all respects. JA 765-70.

Subsequently, Van Aken and Armbrustmacher moved for judgment on the pleadings on the basis of absolute quasi-judicial immunity or, in the alternative, for summary judgment on the basis of qualified immunity or "lack of merit in plaintiff's claims and failure to raise any genuine issue of fact for trial." JA 1158, 1258-62. In a 47-page memorandum opinion, the district court granted summary judgment to the defendants, concluding that Van Aken and Armbrustmacher were entitled to absolute quasi-judicial immunity and to qualified immunity from suit. JA 1134-80. Van Aken

and Armbrustmacher then filed an application for costs, and the court clerk taxed Lawrence in the amount of $1,953.60. JA 1231. Following the filing of objections from Lawrence, the district court denied each of those objections and entered a judgment in favor of the individual defendants for the entire amount of costs assessed. JA 1252-56.

At some point during the pendency of this litigation, which is not disclosed in the record, Lawrence reapplied to the Michigan bar. In one of his briefs to the district court, Lawrence claimed that his application had been held in abeyance since August 18, 2004. JA 1199-1200. A few days before oral argument in this appeal, Lawrence submitted supplemental "authorities" allegedly demonstrating that his latest application had been denied.

## II.

We address the following issues on appeal: (1) whether the district judge and the magistrate judge should have recused themselves; (2) whether the defendants were entitled to various forms of immunity; (3) whether the Michigan attorney-licensing scheme is facially unconstitutional; (4) whether the Michigan attorney-licensing scheme is unconstitutional as applied to him; (5) whether the district court abused its discretion in setting aside the entry of default against Van Aken and Armbrustmacher; (6) whether the magistrate judge should have struck the defendants' affirmative defenses; and (7) whether the district court abused its discretion in assessing costs against Lawrence. Because the district court made correct legal rulings and did not abuse its discretion, we affirm.

### 1. Recusal of the Magistrate and District Judges

The magistrate and district judges in this case were not required to recuse themselves. Lawrence insists that the magistrate judge and the district judge who were assigned to his case should have been disqualified for bias because both jurists served on a standing committee of the State Bar of Michigan, one of the named defendants in this action. A federal judge "shall disqualify himself [when] . . . [h]e knows that he . . . has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding . . . ." 28 U.S.C. § 455(b)(4). A "financial interest" is defined as, among other things, "a relationship as director, adviser, or other active participant in the affairs of a party . . . ." 28 U.S.C. § 455(d)(4). From this definition of "financial interest," Lawrence argues that the judges should have disqualified themselves because they were advisers or active participants in the Michigan Bar. Lawrence reads the statute at issue too strictly.

Even assuming that Judge McKeague and Magistrate Judge Scoville were advisers to the Michigan Bar, they were not required to recuse themselves. Whether recusal is required when one has a financial interest in the affairs of a party depends upon whether one acts as an adviser to a for-profit or nonprofit party. We adopt the reasoning of the Third Circuit, which has held that when a judge allegedly has a relationship with a nonprofit organization, as opposed to a for-profit organization, a "substantial effect test is appropriate." *Plechner v. Widener College, Inc.*, 569 F.2d 1250, 1262 n.6 (3d Cir. 1977). In *Plechner*, the Third Circuit held that a judge, who was a member of the ABA, did not need to recuse himself even though the propriety of the ABA's dismissal as a

party from the case was at issue. The court discussed the same provisions at issue here and distinguished between a judge's relationship with business organizations and "a nonprofit organization concerned with improvement of the legal profession and the public good." *Id.* The court continued that "[t]he considerations which led to the statutory test of possession of an interest, no matter how small, in a profit corporation are not present here and we think it inappropriate to use that test." *Id.* The Third Circuit's reasoning is sound because the provisions defining "financial interest" are clearly concerned about economic interests. For instance, § 455(d)(4) not only discusses legal and equitable interests but also provides exceptions from disqualification when a judge holds securities and mutual funds in both for-profit and nonprofit organizations. *See* 28 U.S.C. § 455(d)(4). Lawrence has not identified how Judges McKeague and Scoville's participation in a bar committee that has nothing to do with bar admission would be substantially affected by the outcome of this case concerning bar admission.

If we were to read the provisions as strictly as Lawrence would have us do—holding that a judge must recuse himself when he or she is a participant in any legal, nonprofit organization—it is likely that no federal judge in Michigan could hear his case because all of the judges would presumably be "active participants" in the Michigan Bar. It is unlikely that Congress meant to reach such memberships, which are either mandatory or strongly encouraged, when enacting these recusal statutes. Lawrence has not identified, and we have not uncovered, any legislative history or caselaw to suggest the contrary. Indeed, the Fifth Circuit has noted that judges' bar memberships do not require disqualification even if the bar is a party to the suit. *See Parrish v. Bd. of Comm'rs of Ala.*

*State Bar*, 524 F.2d 98, 103-104 (5th Cir. 1975) (en banc).  Moreover, it is striking that, after more

than thirty years from the date of the disqualification statute's enactment, no case, at least of which

we are aware, has held that judges who are members of a state bar may not hear cases concerning

that state bar.[1]  Judges McKeague and Scoville, therefore, were not required to disqualify themselves

under 28 U.S.C. § 455(b).

### 2.  Claims of Immunity

Lawrence also challenges the district court's immunity determinations on appeal.  He

challenges the grant of sovereign and quasi-judicial immunity to the various defendants.  His

challenges are without merit.

### a.  Eleventh Amendment Immunity

The district court in this case correctly determined that the State Bar of Michigan and the

Michigan Board of Law Examiners must be dismissed as defendants because of their Eleventh

Amendment sovereign immunity.  The Eleventh Amendment to the United States Constitution

provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit

in law or equity, commenced or prosecuted against one of the United States by Citizens of another

State, or by Citizens or Subjects of any Foreign State."  Although by its explicit wording the

---

[1]We do not address today whether a judge must recuse himself or herself if a member of a nonprofit organization that is less nonpartisan, less all-embracing, or less directly related to the legal profession.

amendment forbids only suits against states filed by nonresidents of that state, the Supreme Court of the United States long ago ruled that the amendment's prohibitions extend to suits against a sovereign state by its own citizens. *See Hans v. Louisiana*, 134 U.S. 1, 15 (1890). Moreover, as the Court held in *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100 (1984) (citations omitted), "this jurisdictional bar applies [to the state or its agencies] regardless of the nature of the relief sought."

In light of these established constitutional principles, the district court in this case correctly determined that the State Bar of Michigan and the Michigan Board of Law Examiners are entitled to Eleventh Amendment immunity. As we held in another case involving a challenge to the rules governing application for admission to the State Bar of Michigan, "[b]ecause they are arms of the Michigan Supreme Court for all purposes relevant to this lawsuit, the Board and the Bar are state agencies immune from this lawsuit under the Eleventh Amendment." *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 615 (6th Cir. 2003). The district court therefore properly dismissed the State Bar of Michigan and the Michigan Board of Law Examiners as defendants from Lawrence's action.

### b. Legislative Immunity

The district court also correctly dismissed Chief Justice Maura Corrigan and the associate justices of the Michigan Supreme Court as defendants after concluding that they were entitled to absolute legislative immunity from suit. In *Supreme Court of Virginia v. Consumers Union of the United States, Inc.*, 446 U.S. 719, 734 (1980), the Supreme Court of the United States recognized

that state supreme courts could be vested with the state's "entire legislative power" when promulgating rules for the regulation of a state bar. Consequently, when issuing guidelines for the admission, conduct, or discipline of attorneys, a state's highest court is acting in its legislative capacity and is thus immune from suit, whether for retrospective or prospective relief, regarding those rules. *See id.* Likewise, we have previously held that "[t]he Michigan Supreme Court's promulgation of rules . . . is a legislative activity." *Abick v. Michigan*, 803 F.2d 874, 878 (6th Cir. 1986). It follows that "the justices of the Michigan Supreme Court[, when] acting in their legislative capacity[,] are entitled to legislative immunity." *Id.*

Lawrence's attempt to deprive the chief justice and the associate justices of their absolute immunity by arguing that they were engaged in an executive function fails. Lawrence's complaint alleges that the state supreme court not only promulgates but also enforces the Rules Concerning the State Bar of Michigan. JA 15. The justices' enforcement actions, argues Lawrence, are not protected by legislative immunity. *See Sup. Ct. of Va.*, 446 U.S. at 735-36. Lawrence's argument is not well taken. Lawrence's mere mention of the word "enforces" does not alter the thrust of his complaint. Although he does seek relief against some defendants for their enforcement of the rules against him, his prayer for relief implicates the chief justice and the associate justices only to the extent that they were responsible for promulgating the rules used by other defendants to delay Lawrence's attempt to gain admission to the state bar. The district court, therefore, correctly determined that the chief justice and associate justices of the Michigan Supreme Court were entitled to absolute immunity in this case.

c.     *Qualified Immunity*

Van Aken and Armbrustmacher are entitled to qualified immunity as to Lawrence's claims against them.  On appeal, Lawrence has argued only that qualified immunity was not proper because Van Aken and Armbrustmacher engaged in ministerial, as opposed to discretionary, functions.  *See* Lawrence's Br. at 23, 43-47; Lawrence's Reply Br. at 6-7.  His contention, for the reasons stated by the district court, fails.  In *Harlow v. Fitzgerald*, the Supreme Court held that "government officials performing *discretionary* functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  457 U.S. 800, 818 (1982) (emphasis added).  We agree with the district court:

> [T]he defendants exercised significant discretion.  State Bar staff determines whether, based on the information provided and obtained through investigation, there is "significant" adverse factual information such that the application is referred to a district committee, or whether there is "no significant adverse factual information" such that the staff would forward a favorable recommendation to the Board of Law Examiners.  When a referral is made to a district committee, the staff drafts a notice identifying the issues that will be considered by the district committee.  The staff generally determines when an application is ready for referral to a district committee, and it did so in this case.  Plaintiff contends that the defendants did not exercise any sort of judgment when they held his application in abeyance pursuant to Rule A(5) of the standing committee rules or procedure.  Rule A(5) provides that an application "should" be delayed while the applicant has criminal charges pending, but does not compel that result in all cases.  The court finds that defendants' actions in investigating and preparing a written report to assist the eventual judicial decision-maker are functionally analogous to the functions performed by probation officers in conducting investigations and preparing presentence reports—functions for which they are entitled to absolute quasi-judicial immunity.

JA 1160-61 (footnote and citations omitted). Therefore, the ministerial exception to qualified

immunity is not applicable here.

Although normally we next consider whether the defendants' conduct as alleged violated a

constitutional right, it is unnecessary to do so here because Lawrence has failed to argue on appeal

that any of the alleged constitutional violations were "clearly established" at the time that defendants

acted. To determine whether a state employee is entitled to qualified immunity, we employ a two-

step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured,

a constitutional right has been violated, and (2) whether that right was clearly established." *Estate*

*of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005). The burden of proving that the right

was clearly established "rests squarely on the plaintiff," *Cope v. Heltsley*, 128 F.3d 452, 459 (6th

Cir. 1997), and the "failure to present an argument in an appellate brief waives appellate review,"

*Brown v. I.R.S.*, 3 Fed. App. 272, 274 (6th Cir. Jan. 26, 2001) (referring to *Buziashvili v. Inman*, 106

F.3d 709, 719 (6th Cir. 1997), and *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 881 (6th Cir.

1996)). Lawrence has failed to argue, much less provide any case law to demonstrate, that the

defendants violated clearly established constitutional rights.[2] There is no need to decide whether

the defendants violated Lawrence's constitutional rights when Lawrence waived the issue of whether

[2]Avoiding the preliminary question of whether there was a constitutional violation does not contravene *Saucier v. Katz*, 533 U.S. 194, 201 (2001). *Saucier* instructs lower courts to decide whether a constitutional right has been violated before deciding whether that violated right is clearly established. In this case, we do not decide on the merits whether any allegedly violated right was clearly established. We simply hold that Lawrence has waived any challenge on appeal to the defendants' qualified immunity defense by failing to make any argument that the rights violated were clearly established. *Saucier* does not compel courts to answer waived issues.

- 15 -

the rights were clearly established. Lawrence cannot demonstrate that the defendants are not entitled

to qualified immunity. For these reasons, we do not disturb the district court's holding that Van

Aken and Armbrustmacher are entitled to qualified immunity.

### 3. Facial Challenges to Bar Rules

Lawrence's facial challenge to the Michigan attorney-licensing scheme fails to state a claim

upon which relief can be granted. The Michigan Bar's process for licensing attorneys does not

unconstitutionally infringe upon an applicant's First Amendment right to free expression or give

unbridled discretion to the decision-maker. The admission process also provides sufficient review

of adverse character determinations.[3]

By statute, the Michigan legislature has provided the general qualifications for admission

to the state bar:

> A person is qualified for admission to the bar of this state who proves to the
> satisfaction of the board of law examiners that he or she is a person of good moral
> character, is 18 years of age or older, has the required general education, learning in
> the law, and fitness and ability to enable him or her to practice law in the courts of

---

[3]The only defendants remaining in the litigation not entitled to some sort of immunity are Chabot, in her official capacity as chair of the Board of Law Examiners, and Berry, in his official capacity as executive director of the State Bar of Michigan. As previously mentioned in this opinion, the State Bar and the Board of Law Examiners are entitled to sovereign immunity, and the chief justice and associate justices of the Michigan Supreme Court are entitled to legislative immunity. Sovereign and legislative immunity shield defendants from retrospective and prospective relief. *See Pennhurst*, 465 U.S. at 100 (sovereign immunity), *and Sup. Ct. of Va.*, 446 U.S. at 732-33 (legislative immunity). Van Aken and Armbrustmacher were only sued in their individual capacities and are entitled to qualified immunity.

record of this state, and that he or she intends in good faith to practice or teach law in this state. Additional requirements concerning the qualifications for admission are contained in subsequent sections of this chapter.

Mich. Comp. Laws Ann. § 600.934(1). The term "good moral character" is defined as:

The phrase "good moral character", or words of similar import, when used as a requirement for an occupational or professional license or when used as a requirement to establish or operate an organization or facility regulated by this state in the Michigan Compiled Laws or administrative rules promulgated under those laws shall be construed to mean the propensity on the part of the person to serve the public in the licensed area in a fair, honest, and open manner.

Mich. Comp. Laws Ann. § 338.41(1).

In addition, the state legislature has recognized that the state "supreme court has the power to provide for the organization, government, and membership of the state bar of Michigan, and to adopt rules and regulations concerning the . . . investigation and examination of applicants for admission to the bar." Mich. Comp. Laws Ann. § 600.904. To that end, the Michigan Supreme Court promulgated Rule 15, Section 1, which calls for the appointment of a standing committee on character and fitness within the state bar, as well as additional district character-and-fitness committees. JA 89. Although an applicant whose "past conduct discloses no significant adverse factual information" shall be recommended to the Board of Law Examiners directly without referral to a character-and-fitness committee, all other applicants must first be referred to the appropriate district committee for a personal interview to evaluate any areas of concern. *See* Mich. S. Ct. R. 15, §§ 1(5)(a) and (b).

- 17 -

The standing committee on character and fitness in turn promulgated its own rules of procedure, including Rule A(5), which is at the root of this dispute between Frank Lawrence and the defendants. Rule A(5) provides simply that, when examining an applicant's fitness for admission to the state bar:

> If the applicant has criminal charges pending, the district committee referral should be delayed until the pending proceeding is concluded. An applicant may request that a referral be made prior to the final adjudication of criminal charges, and the request should be granted provided that a district committee report and recommendation does not issue until the criminal matter is concluded.

JA 924.

The Michigan attorney-licensing system does not infringe upon the First Amendment right of free expression. It merely provides reasonable means to fulfill the state's goal of ensuring that attorneys are of sound moral character. Michigan's licensing system demonstrates no signs of constitutional infirmity.

First, the statutes and rules at issue do not show an intent to control speech. The Supreme Court has held that the First Amendment does not prohibit laws justified by a valid governmental interest when those laws do not reflect an intent to control the content of speech but rather incidentally limit unfettered exercise of the right. *See Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961). As the magistrate judge correctly recognized, the licensing scheme does "not directly regulate expressive activity. Rather on its face, [it] addresses conduct, character, and the propensity to serve the public honestly." JA 317. The licensing provisions here are content neutral and impose

no prior restraints. The rules, even if they incidentally limit unfettered exercise of the right to speak freely, thus are not intended to regulate the content of bar applicants' speech.

Second, Michigan's desire to have morally fit lawyers is reasonable and expected. The Supreme Court of the United States has recognized the states' interests in evaluating the fitness of applicants for membership to state bars. *See Konigsberg*, 366 U.S. at 52. Moreover, the Supreme Court has also stated that the "generalized due process right to choose one's field of private employment . . . is nevertheless subject to reasonable government regulation." *Conn v. Gabbert*, 526 U.S. 286, 292 (1999). Michigan's desire to ensure that officers of the court be of sound moral fiber is both laudable and expected, and its belief that criminal convictions might reflect upon the character of the applicant, furthermore, is logical. It is understandable that an informed decision on the character and fitness of an applicant cannot be rendered with any degree of certainty during the pendency of criminal charges. Therefore, a rule mandating that a final decision on an applicant's request for bar admission be stayed until criminal proceedings have concluded is reasonable and does not, in any way, unreasonably implicate an applicant's right to free speech.

The defendants also do not have "unbridled discretion" in deciding whether to admit or to reject bar applicants because the Michigan statute provides sufficient guidance to determine which applicants have "good moral character." In *Law Students Civil Rights Research Council, Inc. v. Wadmond*, 401 U.S. 154, 159 (1971), the Supreme Court upheld against a similar challenge the vaguer New York bar admission standard requiring applicants to demonstrate possession of "the character and general fitness requisite for an attorney and counsellor-at-law [sic]." In doing so, the

Court noted that its own rule at the time provided that the applicants show only that their "private

and professional characters . . . appear to be good." *Id.* at 160.[4]  Michigan's statute provides more

guidance regarding who qualifies as having "good moral character" than either the New York or

Supreme Court rule.  The defendants' discretion is reined in because they must consider the ability

of an applicant to serve the public in a fair, honest, and open manner.  Mich. Comp. Laws §

338.41(1).  Thus, Lawrence's argument that the defendants have too much discretion fails.

Lawrence's final facial challenge to the bar admission rules—that the Michigan procedure

does not provide for sufficient review of any adverse determination—is patently without merit.  The

magistrate judge painstakingly described the ample protections available to a rejected applicant:

> Plaintiff dismisses the elaborate procedures set forth in State Bar Rule 15, on grounds that are hard to discern.  The Michigan rule allows a disappointed applicant more than adequate process, beginning with an informal interview before a district character and fitness committee, proceeding to a full-blown adversarial hearing before the State Bar standing committee, and proceeding through a de novo determination, again with a full panoply of procedural rights, before the State Board of Law Examiners.  If an applicant is unsuccessful through this process, the applicant has the right to judicial review by petition for mandamus in the Michigan Supreme Court. Mich. Ct. R. 7.304(A).  Plaintiff likewise dismisses the efficacy of Supreme Court review by incorrectly asserting that review is a matter of discretion and not right.  The Michigan Supreme Court has constitutional authority to "issue, hear, and determine prerogative and remedial writs." Mich. Const. 1963, art. VI, § 4.  Unlike the Supreme Court's appellate jurisdiction, which is discretionary, mandamus falls within the court's original jurisdiction, and leave to appeal is not required.  In support of his argument, plaintiff points to the practice of the Michigan Supreme Court to decide mandamus petitions in attorney admission matters, whether favorably or unfavorably, in short, per curiam orders.  The fact that the court finds

---

[4]The current version of Rule 5(1) of the Rules of the Supreme Court of the United States requires that an applicant "must appear to the Court to be of good moral and professional character."

> long opinions unnecessary in most cases does not negate the applicant's right under
> state law to judicial review. The Supreme Court often issues extensive opinions in
> the discharge of its original mandamus jurisdiction.

JA 318 (some citations omitted). Finally, to the extent that any federal right is allegedly violated, Lawrence, after exhausting his state-court remedies, may petition the Supreme Court of the United States for a writ of certiorari. *See* 28 U.S.C. § 1257. The many opportunities for review under the Michigan licensing system amply support the facial constitutionality of the system.

### 4. As-Applied Challenges to Bar Rules

Lawrence's as-applied challenge to the Michigan attorney-admission procedures fails because this claim was not ripe for adjudication at the time that the district court entered judgment.[5] The ripeness doctrine "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). The doctrine of ripeness is meant to "avoid[] . . . premature adjudication."

---

[5]A few days before oral argument in this court, Lawrence submitted a letter to this court, attached to which were what he deemed "supplemental authorities." These attachments purportedly demonstrate that Lawrence has been denied admission to the Michigan bar. *See* 1/26/06 Letter from Lawrence, attach. #2. Federal Rule of Appellate Procedure 28(j) "permits a party to bring new authorities to the attention of the court; it is not designed to bring new evidence through the back door." *Trans-Sterling, Inc. v. Bible*, 804 F.2d 525, 528 (9th Cir. 1986). We do not consider these attachments because they are not supplemental authorities at all; instead, they are evidence of what has transpired in Lawrence's application process.

Although the district court did not expressly say so, the dismissal of Lawrence's as-applied challenges are without prejudice. *See Peters v. Fair*, 427 F.3d 1035, 1038 (6th Cir. 2005). Therefore, if and when Lawrence's claim is ripe (and in all ways suitable for judicial review), he may reassert this claim. *See id.*

*Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967). To avoid premature adjudication, we "require[] that the 'injury in fact be certainly impending.'" *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County*, 274 F.3d 377, 399 (6th Cir. 2001) (citation omitted). At the time of the district court's decision, the plaintiff had not been denied admission to the bar. He had withdrawn one application, and the defendants had not acted upon his second application. No injury thus had occurred or was "certainly impending."

To circumvent this conclusion, Lawrence contends that the very act of holding his application without rendering a decision violated his First Amendment rights and thus constituted injury. But, as we have previously stated, "The claim may . . . be unripe if the issues are not fit for judicial review, perhaps because future events may greatly affect the outcome of the litigation and the cost of waiting is not particularly severe." *Airline Prof's Ass'n of the Int'l Bhd. of Teamsters, Local Union No. 1224 v. Airborne, Inc.*, 332 F.3d 983, 988 (6th Cir. 2003). The mere delay of his application is not sufficient to make this controversy ripe. First, future admission or denial could have a great effect on this litigation and require supplementing the record. Second, the cost of having his application delayed is not very severe when compared to Michigan's interest in having moral members of its bar. As previously noted in this opinion, the Michigan Bar has a reasonable interest in determining the moral fitness of its applicants, and delaying action on an application during the pendency of a criminal action is logical and expected. The district court properly dismissed the as-applied claims against defendants Chabot and Berry on ripeness grounds.

> 5. *Set Aside of Entry of Default*

The district court did not abuse its discretion in setting aside the entry of default against Van Aken and Armbrustmacher. We review a decision to set aside an entry of default under Rule 55(c) for an abuse of discretion. *See O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 352 (6th Cir. 2003). This court will find an abuse of discretion only when it comes to "a definite and firm conviction that the trial court committed a clear error in judgment." *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996). There was no clear error of judgment in this case.

Under Rule 55(c), a court may set aside an entry of default "[f]or good cause shown." Although a district court has "considerable latitude" under the Rule 55(c) standard, the court, in determining whether a defendant has demonstrated good cause, should examine whether "(1) the default was willful, (2) set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *United Coin Meter Co. v. Seaboard Coastline R.R.*, 705 F.2d 839, 844 (6th Cir. 1983) (citations omitted). Both the magistrate judge and the district judge dutifully considered the required factors in this case and concluded that a set-aside of the entry of default was justified so as to allow this dispute to be decided on the merits. Specifically, the district court found "that the defendants did not intend to thwart the judicial proceedings or display a reckless disregard for the effect of their conduct on the judicial proceedings." JA 767. The district court further determined that the defendants raised the meritorious defense of qualified immunity, which the district court later concluded could serve as an alternative basis for dismissing all claims against Van Aken and Armbrustmacher. Finally, the district judge could envision no prejudice to the plaintiff from setting aside the default given the fact that the defendants filed their motion to set aside entry of default,

along with a proposed answer to the complaint, only sixteen days after the answer was due. JA 767.

Under these circumstances, the district court did not abuse its discretion in determining that the

defendants alleged sufficient facts to justify setting aside the entry of default.

### 6. Refusal to Strike Affirmative Defenses

The magistrate judge did not abuse his discretion in refusing to strike the defendants'

affirmative defenses. "An affirmative defense may be pleaded in general terms and will be held to

be sufficient . . . as long as it gives plaintiff fair notice of the nature of the defense." 5 Wright &

Miller, *Federal Practice and Procedure* § 1274. In *Davis v. Sun Oil Co.*, 148 F.3d 606, 612 (6th

Cir. 1998), the defendant simply stated as follows in its answer: "Plaintiffs' claims are barred by

the doctrine of res judicata." We held that the pleading was sufficient because it gave the plaintiff

notice of the defense. *See id.* Lawrence challenges the defendants' pleading of qualified immunity

in this case: "For the federal claims, defendants are entitled to qualified immunity for all activities

complained of in this complaint." JA 624. The plaintiff does not contend that he was not given

sufficient notice of the defenses or of their legal bases, or that the defendants' pleading in this case

is any more general that the pleading in *Davis*. Instead, Lawrence simply argues that the affirmative

defense pleadings were defective simply because they were "bare one-liners." Because the

applicable test does not require the district court to count the lines of text that an invoked defense

uses and because the defendant's pleading gave Lawrence notice of the defense, the district court

did not err in permitting the defendants to assert their affirmative defenses in their answer.

- 24 -

### 7. Assessment of Costs Against Plaintiff

Lawrence's final argument—that the district court abused its discretion in assessing $1,953.60 in costs against him—is without merit. Lawrence recognizes that Federal Rule of Civil Procedure 54(d)(1) specifically provides, in relevant part, that "[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs. . . ." Lawrence notes, however, that despite the presumption in favor of awarding costs to the prevailing party, the rule permits "denial of costs at the discretion of the trial court." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986). He submits that such a denial of costs is appropriate in this case because (1) he sought to reinstate his application for admission to the bar but the defendants still refused to act upon it, (2) Van Aken and Armbrustmacher refused to utilize the cheaper electronic filing option, and (3) the defendants chose not to assert an immunity defense at the earliest possible time. None of these proffered reasons, however, justifies denying costs to the defendants in this litigation.

First, the fact that Lawrence eventually reapplied for bar admission has no bearing on whether he is responsible for costs in litigation concerning his first application. The two issues simply are not related. Moreover, the defendants had no duty to act immediately on that new application. The defendants may reasonably have needed time to evaluate his latest application and consider all of the evidence concerning Lawrence's moral fitness. After all, a final, or even preliminary, decision was never made on his first application.

Second, Lawrence's claim that the defendants should have used the electronic filing capabilities of the district court to reduce copying costs is spurious. The plaintiff himself admits in his brief that "he was ineligible to use the ECF system." Lawrence's Br. at 60. Consequently, the defendants were required to provide him with paper copies of all court filings, thus eliminating any savings that Lawrence believes the electronic filing would have engendered. The mere fact that the defendants also chose to provide paper copies to the court was simply a cost of litigation and a choice that was not unreasonable.

Finally, the district judge did not abuse his discretion in assessing costs against the plaintiff even though some defendants failed to assert an immunity defense in a pre-answer motion to dismiss. As the court correctly stated in its memorandum opinion discussing the cost issue:

> If plaintiff believed that his claims were barred by immunity, he obviously could have refrained from filing this lawsuit. Plaintiff never sought to voluntarily dismiss any of his claims. Plaintiff consistently pursued an aggressive litigation strategy over the two-year life span of this lawsuit (*see, e.g.*, docket #'s 84, 93, 94, 104, 106, 111, 125, 185, 189, 190, 213, 214, 227, 234), which resulted in defendants incurring the very costs to which plaintiff now vigorously objects. Plaintiff must live with the consequences of his actions.

JA 1254. That Lawrence has learned, at his own expense, that litigation costs money does not mean that the district court abused its discretion in awarding costs to the defendants.

## III.

For the foregoing reasons, we AFFIRM.

**DAVID A. NELSON**, Circuit Judge, concurring. I agree with this court's ultimate disposition of the appeal, but I am uncertain as to whether 28 U.S.C. § 455(b)(4) required the magistrate and district judges to disqualify themselves. If disqualification was required, however, I am satisfied that remedial action on our part is neither necessary nor appropriate.

It seems to me that the membership of the two judges in the State Bar of Michigan's Standing Committee on United States Courts might, depending on the nature and extent of the judges' involvement with the committee, constitute "a relationship as . . . adviser[] or other active participant in the affairs of a party . . . ." 28 U.S.C. § 455(d)(4). Such a relationship, if it existed, would by definition constitute a "financial interest" in the party, and in my view it would be disqualifying, under the plain language of the statute, irrespective of whether the party was a nonprofit organization.

It is true that in *Plechner v. Widener College, Inc.*, 569 F.2d 1250, 1262 n.6 (3d Cir. 1977), the Third Circuit distinguished between business corporations and nonprofit organizations such as the American Bar Association in suggesting that an interest in the bar association would be disqualifying only if a need for disqualification were indicated under the "substantial effect test." The specific interest discussed by the Third Circuit in this connection, however, was a hypothetical interest of the trial judge in avoiding personal exposure, as an ABA member, to liability for a share of any damages that might be awarded against the bar association. Nowhere in the *Plechner* opinion is there any reference at all to the kind of relational interest that concerns us here — the interest that arises from "a relationship as adviser[] or other active participant in the affairs of a party

. . . ."

I should add that I do not think that § 455 would prevent all federal judges from hearing cases involving bar associations of which they are members. Mere membership in a bar association does not constitute "active participa[tion]" in the association's affairs. *Cf. Parrish v. Board of Comm'rs of Ala. State Bar*, 524 F.2d 98, 104 (5th Cir. 1975) (en banc) ("No interest exceeding mere membership is asserted. This is not a ground for disqualification."), *cert. denied*, 425 U.S. 944 (1976). And even a judge who sits on a bar committee might not in all circumstances have a "financial interest" within the meaning of the statute. Not all committee members are "adviser[s]," and not all participation is "active."

If the magistrate and district judges in this case were, in fact, "adviser[s] or . . . active participant[s] in the affairs" of the state bar, and were required on that basis to disqualify themselves, it does not necessarily follow that the judgment appealed from must be vacated. As the Supreme Court has observed, § 455 "neither prescribes nor prohibits any particular remedy for a violation" of the duty to disqualify. *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 862 (1988). Under *Liljeberg*, a "harmless error" analysis applies to violations of § 455. See *id.*; *Harris v. Champion*, 15 F.3d 1538, 1571-72 (10th Cir. 1994). A judgment should be vacated only if allowing the judgment to stand would be unjust or would undermine the public's confidence in the judicial process. See *Liljeberg*, 486 U.S. at 864.

In the case now before us, I am satisfied that any violation of the statute was harmless. Mr.

Lawrence has not shown that the membership of the magistrate and district judge in the state bar committee on the federal courts was likely to influence their handling of a lawsuit concerning an entirely distinct matter — Lawrence's admission to the bar. I do not think any rational observer would conclude that bias caused the two judges to rule as they did. (Indeed, this court has reviewed the district court's decisions and found its legal rulings to be correct and its discretionary rulings to be reasonable.) Vacating the district court's judgment in these circumstances would neither remedy an injustice nor prevent a loss of public confidence in the judicial process.

Accordingly, I would affirm the denial of the motion to disqualify on the ground that any error was harmless. In all other respects I join the majority opinion.